ORIGINAL

FILED
JUN 2 2 2004
U.S. COURT OF
FEDERAL CLAIMS

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANTEON CORPORATION, on behalf of its subcontractor, ENVISIONEERING, INC. (real party in interest),

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

No. 04-1051C

## COMPLAINT

COMES NOW the plaintiff, Anteon Corporation (hereinafter "Anteon") on behalf of its subcontractor, Envisioneering, Inc. (hereinafter "Envisioneering") (the real party in interest in this litigation), and for its Complaint alleges as follows:

## I. PARTIES AND JURISDICTION

1. Anteon is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located in Fairfax, Virginia. Anteon has performed all conditions precedent necessary to its right to file and maintain this action. Anteon has authorized Envisioneering to prosecute this lawsuit. Envisioneering is the real party in interest in this litigation. Envisioneering is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its primary West Coast place of business



ORIGINAL

located in Silverdale, Washington. Envisioneering has performed all conditions precedent necessary to its right to file and maintain this action.

2. Defendant is the United States of America ("Government"), acting by and through the United States General Services Administration (hereinafter "GSA").

3. Jurisdiction is proper in the United States Court of Federal Claims by virtue of 41 U.S.C. § 609 and 28 U.S.C. § 1491.

## II. GENERAL ALLEGATIONS

4. On or about January 1, 1999, Anteon was awarded Contract No. GS-09K-99-BHD-0001 (hereinafter "Prime Contract"), by the General Services Administration. The Prime Contract pertained to the acquisition of certain information technology and engineering services.

5. Anteon and Envisioneering executed Subcontract No. ANSER-SC-021 (hereinafter the "Subcontract") on July 16, 1999. Under the Subcontract, Envisioneering would provide certain services to Anteon in connection with the Prime Contract.

6. Section B of the Government's Solicitation documents, and the resulting Prime Contract, listed seven skill categories as non-exempt, wage determination positions as defined in the Service Contract Act (hereinafter "SCA"). Section B further stated that all other skill levels were exempt from the SCA.

7. During the Solicitation process, Prime Contract offerors asked written questions of the GSA regarding the Solicitation. The questions and GSA's answers were incorporated into the resulting Prime Contract. One of the questions asked during the Solicitation process was Question 242.

8. Question 242 specifically addressed classification of labor categories as exempt or non-exempt pursuant to the SCA and Fair Labor Standards Act (hereinafter "FLSA"), and stated in pertinent part:

> Based on our experience with wage and hour audits, we believe several categories listed as exempt from the SCA and FLSA would be found to be non-exempt in accordance with Title 29, Part 541 of the Code of Federal Regulations regarding the classification of labor categories.... Specifically, based on current Department of Labor interpretations, we are concerned that employees working in the following labor categories would be determined to be non-exempt from the SCA and FLSA. [A list of six labor categories/skill levels follows.].... Will the government consider reclassifying these categories as non-exempt?"

GSA responded to Question 242 as follows:

> The government has determined with the assistance of the Department of Labor which categories are exempt and non-exempt. The government will not be adding the listed skill levels to the non-exempt category.

9. Envisioneering and Anteon relied upon the GSA's clear and specific answer to Question 242, which was subsequently incorporated into the Prime Contract.

10. On March 28, 2002, the Department of Labor concluded that 75 of Envisioneering's employees were underpaid in the amount of $198,971.44 as a result of SCA and Contract Work Hours and Safety Standards Act ("CWHSSA") violations. All 75 employees were working in the labor categories/skill levels that were listed in Question 242, which skill levels the GSA declared would not be added to the non-exempt category. The Department of Labor ultimately requested GSA to withhold the sum of $198,971.44 under the Prime Contract for alleged SCA and CWHSSA violations.

11. GSA subsequently withheld $198,971.44 from payments otherwise due to Anteon under the Prime Contract, and Anteon withheld the same amount from payments otherwise due to Envisioneering under the Subcontract.

12. On January 17, 2003, Anteon submitted a claim, in the principal amount of $198,971.44, pursuant to the Prime Contract's "Dispute" clause to the GSA Contracting Officer for a Final Decision, seeking recovery of the amounts GSA had previously withheld under the Prime Contract. The claim was properly certified.

13. By letter dated June 23, 2003, received by Anteon on June 30, 2003, the Contracting Officer replied to Anteon's claim. The Response, however, was not styled as a Final Decision. Instead, the letter specifically stated "I am unable to render a final decision on the merits of the claim because the 'dispute' does not fall within the ambit of the Disputes Clause." The Contracting Officer apparently believed that Anteon was seeking to challenge a determination by DOL regarding back wage liability, and that the Contracting Officer had no jurisdiction in the matter. The Contracting Officer's response was a *de facto* denial of Anteon's claim. If the Contracting Officer's June 23, 2003 letter was not a *de facto* denial of Anteon's claim, the "deemed denial" provisions of the Contract Disputes Act apply to Anteon's claim.

14. Anteon and Envisioneering are not challenging the current DOL interpretation. This Complaint is based on the fact that, in specific reply to a particular question incorporated into the Prime Contract, GSA stated that after consultation with the Department of Labor, it had made certain conclusions.

15. Based on the GSA's conclusions, made in response to Question 242, only three conditions are possible, all of which are supported by case law granting jurisdiction to this Court under the Contract Disputes Act to hear such a dispute. First, the Labor Department later changed its mind which it certainly has the right to do, but under applicable clauses, the contractor is entitled to an equitable adjustment. Second, GSA did not coordinate properly with

the Labor Department in which case GSA was guilty of misrepresentation. Third, GSA and Anteon and Envisioneering suffered from a mutual mistake as to what the answer by DOL was.

## III. FIRST CAUSE OF ACTION – BREACH OF CONTRACT – FAILURE TO EQUITABLY ADJUST THE CONTRACT PURSUANT TO ITS CLAUSES

16. Anteon realleges the contents of the foregoing paragraphs 1-15 as though set forth in full herein.

17. GSA failed to equitably adjust the contract price as required by the Prime Contract.

## IV. SECOND CAUSE OF ACTION – MISREPRESENTATION

18. Anteon realleges the contents of the foregoing paragraphs 1-17 as though set forth in full herein.

19. GSA made a material misrepresentation as to its discussion with DOL and thereby misled Anteon and Envisioneering to their detriment.

## V. THIRD CAUSE OF ACTION – MUTUAL MISTAKE

20. Anteon realleges the contents of the foregoing paragraphs 1-19 as though set forth in full herein.

21. Granting GSA every benefit and doubt, at the very least, the GSA and -- because of GSA's answer to Question 242 -- Anteon and Envisioneering suffered from a mutual mistake as to whether certain categories of employees would be exempt.

## VI. DAMAGES

22. Anteon realleges the contents of the foregoing paragraphs 1-21 as though set forth in full herein.

23. As a result of the Government's breaches of its Contract with Anteon, Anteon and Envisioneering have been damaged in the amount of $198,971.44, exclusive of interest, costs, expenses, consultant and attorneys' fees to which Anteon and Envisioneering may be entitled as a matter of law, contract, or equity.

## VII. PRAYER FOR RELIEF

WHEREFORE, having set forth its causes of action against the Government, Anteon prays for judgment in its favor against the Defendant, The United States of America, as follows:

1. For monetary judgment against the United States in the principal sum of not less than $198,971.44.

2. For monetary judgment against the United States under 28 U.S.C. § 2412, and to the maximum extent otherwise allowable by law, for prejudgment interest, recovery of all costs, expenses, consultant and expert fees and expenses incurred, plus recovery of all attorney and litigation service provider fees, costs, and expenses incurred by Anteon and Envisioneering in having to prepare, negotiate, and prosecute this matter.

3. For permission to conform its pleadings to the proof offered at trial.

4. For such other and further relief as the Court deems just, equitable, and proper.

DATED this 21st day of June, 2004.

By ______________________

**John Lukjanowicz**
Oles Morrison Rinker & Baker, LLP
701 Pike Street, Suite 1700
Seattle, WA 98101-3930
Phone: (206) 623-3427
Fax: (206) 682-6234
Email: Lukjanowicz@oles.com
Attorneys for Plaintiff

Of counsel:

**James F. Nagle**
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 1700
Seattle, WA 98101-3930
Phone: (206) 623-3427
Fax: (206) 682-6234
E-mail: Nagle@oles.com
Attorneys for Plaintiff